Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CÁMARA DE COMERCIO DE PUERTO RICO (CHAMBER OF COMMERCE OF PUERTO RICO); ASOCIACIÓN HECHO EN PUERTO RICO, INC.; ASOCIACIÓN DE RESTAURANTES DE PUERTO RICO (ASORE); CÁMARA DE MERCADEO, INDUSTRIA Y DISTRIBUCIÓN DE ALIMENTOS, INC.; ASOCIACIÓN DE INDUSTRIALES DE PUERTO RICO; PUERTO RICO HOTEL & TOURISM ASSOCIATION, INC.; ASOCIACIÓN DE COMERCIO AL DETAL, INC.<br><br>Apelantes<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, REPRESENTADO POR SU SECRETARIO DE JUSTICIA, DOMINGO EMANUELLI HERNÁNDEZ, COMISIÓN EVALUADORA DEL SALARIO MÍNIMO, ADSCRITA AL DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS, REPRESENTADOS POR SU PRESIDENTE Y SECRETARIO, GABRIEL MALDONADO GONZÁLEZ, RESPECTIVAMENTE<br><br>Apelados | KLAN202400689 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV06161<br><br>Sobre: Mandamus y/o Sentencia Declaratoria |

Panel integrado por su presidenta la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

El 19 de julio de 2024, compareció ante este Tribunal de Apelaciones, la Cámara de Comercio de Puerto Rico, la Asociación

de Hecho en Puerto Rico, Inc., la Asociación de Restaurantes de Puerto Rico (ASORE), la Cámara de Mercadeo, la Industria y Distribución de Alimentos Inc. (en adelante, parte apelante), por medio de *Apelación*. Mediante esta, nos solicita que revisemos la *Sentencia* emitida y notificada el 8 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Desestimación* presentada el 7 de julio de 2024, por el Estado Libre Asociado de Puerto Rico (en adelante, ELA) y por sí y en representación de la Comisión Evaluadora del Salario Mínimo (en adelante, parte apelada), y consecuentemente, desestimó la *Petición de Mandamus y/o Solicitud de Sentencia Declaratoria* presentada por la parte apelante.

Por los fundamentos que adelante se exponen, se confirma el dictamen apelado.

**I**

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Petición de Mandamus y/o Solicitud de Sentencia Declaratoria*, presentada por la parte apelante, contra el ELA, representado por su Secretario de Justicia, Domingo Emanuelli Hernández, y de la Comisión Evaluadora del Salario Mínimo, adscrita al Departamento del Trabajo y Recursos Humanos, representados por su Presidente y Secretario, Gabriel Maldonado González. En apretada síntesis, la parte apelante sostuvo que, el 12 de junio de 2024, la Comisión Evaluadora del Salario Mínimo (en adelante, Comisión Evaluadora), había emitido una determinación administrativa donde aprobó que, a partir del 1ro de julio de 2024, entraría en vigor un aumento del salario mínimo de diez dólares con cincuenta centavos la hora ($10.50/hr), conforme a la Ley Núm. 47 de 21 de septiembre de 2021, conocida como la *Ley de Salario Mínimo de Puerto Rico* (Ley de Salario Mínimo), *infra.* Acotó que, la

aludida determinación administrativa fue aprobada con el voto afirmativo de tres de sus cinco miembros y que ello era contrario a la Ley de Salario Mínimo, *infra*. Puesto que, según la parte apelante, era necesario el voto de los cinco (5) miembros de la Comisión Evaluadora para que tal determinación fuese válida. De igual forma, la parte apelante argumentó que, si la determinación de la Comisión Evaluadora entraba en vigor, sufriría "un enorme daño irreparable" debido a que los patronos establecidos en Puerto Rico se verían obligados a pagar un salario mínimo impuesto en forma contraria a derecho y violación de los deberes ministeriales de la Comisión Evaluadora. Aseguró que, la Ley de Salario Mínimo, *infra*, dispone que para que la Comisión Evaluadora pueda tomar decisiones o decidir no actuar sobre un asunto de su competencia, cinco (5) miembros deben estar de acuerdo para funcionar y consignar votos a favor de tal funcionamiento y que ello constituía un deber ministerial. Argumentó que, le correspondía a la primera instancia judicial ordenarle a la Comisión Evaluadora cumplir con su deber ministerial de adoptar un decreto mandatorio que subsane el vacío variando el mismo, conforme el mandato de la sección 2.02 de la Ley de Salario Mínimo, *infra*. A tales efectos, le solicitó al foro primario que declarara Ha Lugar su petición y paralizara la entrada en vigor del aumento del salario mínimo de $10.50/hr, y que emitiera sentencia declaratoria donde declarara la nulidad de la determinación administrativa.

Mediante *Orden* emitida el 2 de julio de 2024, el foro primario señaló una vista urgente para el 8 de julio de 2024, a los efectos de determinar la procedencia del *mandamus* solicitado por la parte apelante.

El 7 de julio de 2024, la parte apelante presentó el *Memorando de Derecho en Apoyo a Petición de Mandamus y/o Solicitud de Sentencia Declaratoria*. En esencia, realizó un análisis de la

intención legislativa de la Ley Núm. 47-2021, *infra*. Interpretó que, el aludido estatuto era claro en su lenguaje respecto a la delegación de poderes a la Comisión Evaluadora y sus facultades respecto al aumento del salario mínimo estatal de $10.50 la hora. A su juicio, la Ley de Salario Mínimo, *infra*, no dejaba espacio para interpretar que la Comisión Evaluadora no tiene facultad para variar las propuestas legislativas sobre la tercera fase y los aumentos subsiguientes. Sostuvo, además, que, la Ley de Salario Mínimo, *infra*, condiciona el aumento del salario mínimo estatal de $10.50 la hora y los que le sigan, a la aprobación de un *Informe Anual sobre el Costo de Vida y la Inflación en Puerto Rico*. Asimismo, la parte apelante argumentó que, la Ley de Salario Mínimo, *infra*, le delegó a la Comisión Evaluadora los deberes ministeriales de: 1) aprobar un *Informe Anual sobre el costo de vida y la inflación en Puerto Rico* y 2) dictar si procede el aumento al salario mínimo estatal de $10.50 la hora y, de no proceder, emitir un decreto mandatorio variando el mismo, según el mandato estatuido en la Sección 2.02 del aludido estatuto. De igual manera, reiteró que, cualquier desvío realizado por la Comisión Evaluadora excedió la autoridad de la agencia según delegada por la Asamblea Legislativa, y que, por ello, tal acción debía ser declarada nula y reversada.

En igual fecha, la parte apelada presentó la *Moción de Desestimación*. En primer lugar, arguyó que, la Comisión Evaluadora decidió no emitir una determinación administrativa, y que, lo emitido el 12 de junio de 2024 fue un comunicado de prensa a los fines de comunicar la entrada en vigor del salario mínimo de $10.50 la hora efectivo al 1 de julio de 2024, conforme lo establecido en la Ley Núm. 47-2021, *infra*. Expresó que, la Comisión Evaluadora había derrotado por mayoría la posibilidad de emitir un decreto mandatorio para variar el aumento previsto o cambiar su fecha de vigencia. Adujo, además, que, la solicitud de *mandamus* era

imprecedente debido a que, la parte apelante fracasó en identificar un deber ministerial incumplido por la Comisión Evaluadora, y que carecía del requisito de una declaración jurada suscrita por todos los miembros de la parte apelante. Asimismo, sostuvo que, no procedía emitir sentencia declaratoria ante la "ausencia de una incertidumbre jurídica", así como no podía solicitarse una sentencia declaratoria para anular una determinación administrativa inexistente. Conforme a lo anterior, acotó que procedía que se desestimara la reclamación de epígrafe debido a que, estaba basada en "alegaciones fácticas erróneas e interpretación de derecho que no encuentran apoyo en la Ley Núm. 47-2021". De igual manera, argumentó que, la Asamblea Legislativa decretó un aumento automático del salario mínimo para el 1ro de julio de 2024 sin imponerle a la Comisión Evaluadora el deber de validarlo, y le concedió amplia discreción para determinar si era necesario variar lo dispuesto por ley respecto a este. Sostuvo que, lo anterior denotaba la ausencia de un deber ministerial susceptible de un *mandamus*. Añadió que, la Sección 2.02 de la Ley de Salario Mínimo, *infra*, establece que la Comisión Evaluadora solo puede intervenir con el salario mínimo dictaminado por ley para variarlo, o sea, para modificar la cuantía del aumento, determinar otra fecha para su implementación o una combinación de ambas, no para aprobarlo, según sugería la parte apelante. Aseguró que, la Comisión Evaluadora no tenía la obligación de emitir decreto mandatorio para que entrara en vigor el aumento salarial del 1 de julio de 2024. A estos fines, solicitó al foro primario que desestimara la petición de *mandamus* y de sentencia declaratoria.

Finalmente, luego de haber celebrado una vista y escuchado las posturas de las partes, el 8 de julio de 2024, el Tribunal de Primera Instancia emitió la *Sentencia* cuya revisión nos ocupa. En su *Sentencia*, el foro primario realizó un análisis de la sección 2.02

de la Ley Núm. 47-2021, *infra*. Explicó que, para determinar si existía un deber ministerial incumplido, era necesario acudir al texto de la ley, que lee como sigue:

> El 1 de enero de 2022, se aumentará el salario mínimo en Puerto Rico a ocho dólares con cincuenta centavos la hora ($8.50/hr). Para el 1 de julio de 2023 el aumento del Salario Mínimo en Puerto Rico, será a nueve dólares con cincuenta centavos la hora ($9.50/hr). **Para el 1 de julio de 2024, el aumento al salario mínimo de Puerto Rico será a diez dólares con cincuenta centavos la hora ($10.50/hr) a menos que la Comisión Evaluadora de Salario Mínimo emita un decreto mandatorio variando el mismo.** (Énfasis nuestro).

El foro *a quo*, expresó, además, que:

> [L]uego de leer el citado extracto de la sección 2.02 podemos observar que la Asamblea Legislativa estableció un aumento obligatorio y sin condición de $8.50/hr del 1 de enero de 2022 al 1 de julio de 2023. De la misma forma, del 1 de julio de 2023 al 1 de julio de 2024, el aumento mandatorio y sin condición sería de $9.50/hr. Finalmente, del texto de la ley surge meridianamente claro que la Asamblea Legislativa estableció un aumento al salario mínimo de $10.50/hr. Ahora bien, la Asamblea Legislativa **determinó que este aumento se podía variar mediante un decreto mandatorio emitido por la Comisión**.

De igual manera, el foro de primera instancia explicó que, la oración de la sección 2.02 de la precitada ley, respecto a que "para el 1 de julio de 2024, el aumento al salario mínimo de Puerto Rico será a diez dólares con cincuenta centavos la hora ($10.50/hr) a menos que la Comisión Evaluadora de Salario Mínimo emita un decreto mandatorio variando el mismo", tenía dos partes. A saber, "1) la norma general en la cual se estableció, mediante acto legislativo (de igual forma que los aumentos anteriores del 2022 y 2023) un aumento del salario mínimo comenzando el 1 de julio de 2024; y 2) el establecimiento de una excepción o condición a que se estableciera el aumento a $10.50/hr si la Comisión determina, luego de haber llevado a cabo los estudios necesarios, que se debe emitir un decreto mandatorio variando este". Concluyó que, el texto de la Sección 2.02 de la Ley Núm. 47-2021, *infra*, era claro y no adolecía

de ambigüedad alguna respecto a que la Asamblea Legislativa había determinado establecer un aumento del salario mínimo para llevarlo a $10.50/hr. Añadió que, la Asamblea Legislativa le delegó a la Comisión Evaluadora la tarea de determinar si de acuerdo al análisis que requiere la ley, procedía que se hiciera una variación del salario mínimo establecido, y que esta, determinó no variarlo. Según el Tribunal de Primera Instancia, tal acción no requiere el voto de cinco (5) miembros como entendía la parte apelante, ya que la Comisión Evaluadora solo tenía capacidad de hacer una variación al aumento mediante decreto mandatorio. Por tanto, a su juicio, no existía un deber ministerial incumplido. Por otro lado, respecto a la solicitud de sentencia declaratoria, sobre si la Comisión Evaluadora debe llegar a cinco (5) votos para tomar decisiones, determinó que, al momento no procedía discutir la controversia. Señaló que, la parte apelante carecía de justiciabilidad para plantear la sentencia declaratoria sobre la cantidad de los votos. Asimismo, expresó lo siguiente:

> Como establecimos, la Ley Núm. 47 no requería emitir un decreto en cuanto al aumento de $10.50/hr., puesto que no se hizo una variación. Distinto sería, por ejemplo, si la Comisión hubiese modificado el aumento establecido mediante mandato legislativo, a $10.00/hr. Ese no es el presente caso. Por lo tanto, los demandantes nos solicitan que emitamos una opinión consultiva sobre un asunto que no está en controversia.

Consecuentemente, declaró Ha Lugar la moción de desestimación presentada por la parte apelada y desestimó las peticiones de *mandamus* y sentencia declaratoria.

En desacuerdo, el 12 de julio de 2024 la parte apelante presentó ante el Tribunal Supremo de Puerto Rico, *Solicitud de Certificación* y *Solicitud de Vista Oral.* Nuestro más Alto Foro declaró No Ha Lugar dichas solicitudes.

Inconforme con lo resuelto, la parte apelante acudió ante este foro mediante *Apelación*, en la cual esgrimió los siguientes señalamientos de error:

- Erró el Honorable Tribunal de Primera Instancia en su interpretación de la Sección 2.02 de la Ley de Salario Mínimo, 29 LPRA § 262a, al decidir que esa disposición opera *ex proprio vigore* y que, por lo tanto, la Comisión Evaluadora de Salario Mínimo no debía tener mayoría de cinco (5) votos para aprobar el aumento de $10.50 la hora efectivo al 1ro de julio de 2024[,] pues "solo tenía capacidad de hacer una variación al aumento mediante decreto". Ello, porque dicha interpretación es contraria a la letra clara de la totalidad de ese estatuto visto en forma integral, según las reglas de hermenéutica.

- Erró el Honorable Tribunal de Primera Instancia al decidir que la Comisión Evaluadora de Salario Mínimo no tiene el deber ministerial de aprobar el aumento de $10.50 la hora efectivo al 1ro de julio de 2024 o variarlo mediante voto afirmativo de cinco (5) de sus miembros, razón por la cual denegó el *mandamus* solicitado, a pesar de que el referido deber ministerial emana de la interpretación integral de la Sección 2.02 de la Ley de Salario Mínimo vista en conjunto con su Exposición de Motivos y las Secciones 2.03, 2.05, 2.09d y 2.11 de ese estatuto, entre otras, 29 LPRA § 261 *et seq.*

- Erró el Honorable Tribunal de Primera Instancia al decidir que la sentencia declaratoria solicitada no procede por falta de justiciabilidad en cuanto a la cantidad de votos de los miembros de la Comisión Evaluadora de Salario Mínimo necesarios para aprobar el aumento de $10.50 la hora efectivo al 1ro de julio de 2024 o variarlo, toda vez que este asunto está en controversia y pronunciarse sobre ello, lejos de ser una opinión consultiva, es un asunto justiciable maduro que debe atenderse en sus méritos según los hechos de este caso.

Conjuntamente con su recurso de Apelación, la parte apelante presentó ante este Tribunal *Moción en Auxilio de Jurisdicción*.

Este Tribunal el 19 de julio de 2024 emitió Resolución, la cual fue enmendada el 22 de julio de 2024, mediante la cual se dispuso:

Atendido el recurso de *Apelación* presentado por la parte apelante el 19 de julio de 2024, así como la *Moción en Auxilio en Jurisdicción*, presentada ese mismo día a las 12:04pm, *este Tribunal dispone:*

La parte apelante dispone hasta el **martes 23 de julio de 2024, a las 11:30 de la mañana,** para acreditar la notificación del recurso al Tribunal de Primera

Instancia y las partes, así como la notificación simultánea de la *Moción en Auxilio de Jurisdicción.*

El incumplimiento con lo aquí ordenado podrá dar a lugar a la desestimación del recurso.

En cuanto a la *Moción Solicitando Autorización para Presentar la Apelación en Exceso del Número de Páginas,* presentada por la parte apelante, este Tribunal dispone:

Ha Lugar. Se autoriza la presentación del recurso en exceso del número de páginas reglamentario.

Atendida la *Moción Solicitando Autorización para Presentar Copias del Apéndice en USB por su Volumen* presentada por la parte apelante, *este Tribunal dispone:*

La parte apelante dispone hasta el **martes 23 de julio de 2024, a las 11:30 de la mañana** para someter una copia impresa del apéndice. El incumplimiento con lo aquí ordenado podrá dar a lugar a la desestimación del recurso.

**Se enmienda la Resolución emitida el 19 de julio de 2024**, a los fines de modificar los términos como aquí se dispone:

La parte apelada dispone hasta el **lunes 29 de julio de 2024 a las 12:00 del mediodía** para exponer su posición en torno a la *Moción en Auxilio de Jurisdicción* y hasta el **lunes 19 de agosto de 2024** para oponerse al recurso de apelación. Transcurridos los términos aquí dispuestos, los asuntos quedarán sometidos para su adjudicación.

En cumplimiento con lo ordenado la parte apelada incoó *Moción en Solicitud de Autorización para Presentar Oposición a Moción en Auxilio de Jurisdicción en Exceso de Páginas* y la *Oposición a Moción en Auxilio de Jurisdicción.* Mediante Resolución emitida el 30 de julio de 2024, se dispuso lo siguiente:

Examinada la *Moción en Solicitud de Autorización para Presentar Oposición a Moción en Auxilio de Jurisdicción en Exceso de Páginas* y la *Oposición a Moción en Auxilio de Jurisdicción* presentadas por la parte apelada el 29 de julio de 2024, este Tribunal dispone:

Se autoriza la presentación de la *Oposición a Moción en Auxilio de Jurisdicción* en exceso de páginas reglamentario. De otra parte, se declara NO HA LUGAR la *Moción en Auxilio en Jurisdicción* presentada por la parte apelante el 19 de julio de 2024.

## II

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos. *Argüello v. Argüello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *SLG Rivera Carrasquillo v. AAA*, 117 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778, *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022)[1].

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido

---

[1] Véase también *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

### B. Sentencia declaratoria

La Regla 59 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 59, establece el mecanismo de la sentencia declaratoria. En lo pertinente, en la misma se dispone lo siguiente:

### Regla 59.1. Cuando procede.

*El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario.*

En *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 109 (2020), nuestro Tribunal Supremo manifestó que la sentencia declaratoria es un "'mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita'". *Senado de PR v. ELA*, 203 DPR 62, 71 (2019), citando a *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015). Este recurso extraordinario, cuyo propósito es disipar una incertidumbre jurídica y contribuir a la paz social, puede ser dictado en procesos en los cuales "los hechos alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos [...]". R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., San Juan, Ed. Lexis Nexis, 2010, pág. 560. Además, provee que "toda persona [...] cuyos derechos [...] fuesen afectados

por un estatuto, una ordenanza municipal, un contrato o una franquicia, [puede] solicitar una [determinación] sobre cualquier divergencia en la interpretación o validez de [estos] y [...] que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven". Regla 59.2(a) de Procedimiento Civil, 32 LPRA Ap. V.

Conforme a la doctrina prevaleciente, el mecanismo de la sentencia declaratoria debe utilizarse cuando permite finalizar situaciones de incertidumbre o inseguridad en cuanto a derechos. *Suárez v. CEE,* 162 DPR 43 (2004); *Colegio de Ingenieros v. AAA,* 131 DPR 735 (1992); *Charana v. Pueblo,* 109 DPR 641 (1980); *Moscoso v. Rivera,* 76 DPR 481 (1954). De ese modo, permite obviar la inseguridad y los peligros de un salto en la oscuridad, cuando existe una controversia jurídica genuina entre las partes. *Asoc. de Vecinos v. Iglesia Católica,* 117 DPR 346 (1986).

La sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas tanto en el ámbito público, como en el privado. *Romero Barceló v. ELA,* 169 DPR 460 (2006)*; Moscoso v. Rivera,* supra. Al emitir una sentencia declaratoria, el Tribunal de Primera Instancia debe comparar los intereses públicos y privados de las partes, la necesidad de emitir la sentencia declaratoria y el efecto que ello tiene sobre lo reclamado, por lo que debe demostrarse que los intereses de la justicia serían bien servidos. *Moscoso v. Rivera,* supra.

## C. *Mandamus*

La acción de *mandamus* está regida por la Regla 54 de Procedimiento Civil, 32 LPRA, Ap. V, R. 54, y el Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421 y siguientes. El *mandamus*, según lo define nuestra legislación, "es un auto altamente privilegiado dictado por el Tribunal Supremo del Estado Libre Asociado, o por el Tribunal Superior de Puerto Rico, a nombre

del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes". 32 LPRA sec. 3421; *Kilometro O, Inc. v. Pesquera López*, 207 DPR 200, 214 (2021); *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972 (2020); *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 427 (2020); *Noriega v. Hernández Colón*, 135 DPR 406, 447 (1994). Es decir, mediante este, se exige el cumplimiento de un deber ministerial dentro de las atribuciones o deberes del cargo que ocupa. *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214. El "deber ministerial se refiere a un mandato específico que no admite ejercicio de discreción en su cumplimiento". *Íd.*; *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 985; *Aponte Rosario et al. v. Pres. CEE II*, supra, págs. 427-428. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo. 32 LPRA sec. 3421.

Como bien expresa la ley, el auto de *mandamus* es uno "altamente privilegiado". Esto significa que su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214. Dicha expedición "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". *AMPR v. Srio. Educación, ELA*, 178 DPR 253, 266 (2010). Lo que significa que, solo deberá expedirse cuando la parte peticionaria carece de "un recurso adecuado y eficaz en el curso ordinario de la ley". 32 LPRA sec. 3423; *Kilometro O, Inc. v. Pesquera López*, supra, pág. 214; *Aponte Rosario et al. v. Pres. CEE II*, supra, pág. 428. La procedencia del *mandamus* depende inexorablemente del carácter del acto que

se pretende compeler mediante dicho recurso. D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Ed. UIA, 1996, pág. 107. En resumen, solo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio. *Acevedo Vilá v. Aponte Hernández*, 168 DPR 443, 454-455 (2006); *Báez Galib y otros v. CEE*, 152 DPR 382 (2000).

El *mandamus*, "aunque es un remedio en ley, participa de la índole de los de equidad". Por consiguiente, algunos principios rectores de los recursos de equidad, como los que gobiernan el *injunction*, son aplicables al auto de *mandamus*. *AMPR v. Srio. Educación, ELA*, supra, pág. 263.

El requisito fundamental para expedir el recurso de *mandamus* reside, pues, en la constancia de un deber claramente definido que debe ser ejecutado. Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". *AMPR v. Srio. Educación, ELA*, supra, págs. 263-264. Por tal razón, aquella persona que se vea afectada por el incumplimiento del deber podrá solicitar el recurso. *Id.*

Ahora bien, "antes de radicarse la petición de *Mandamus*, la jurisprudencia requiere, como condición esencial, que el peticionario le haya hecho un requerimiento previo al demandado para que éste cumpla con el deber que se le exige, debiendo alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; [o] 2) cuando el deber que se pretende exigir es uno de carácter público, a diferencia de uno de naturaleza particular, que afecta solamente el derecho del peticionario". *Noriega v. Hernández Colón*, supra, págs. 448-449.

Entre los factores a tomarse en consideración cuando se solicita de un tribunal la expedición de un auto de *mandamus* se encuentran: el posible impacto que este pueda tener sobre los intereses públicos que puedan estar envueltos; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros. *AMPR v. Srio. Educación, ELA,* supra, pág. 268; *Kilometro O, Inc. v. Pesquera López,* supra, pág. 215.

En fin, el Tribunal Supremo de Puerto Rico, expresó en *Díaz González, v. Tribunal Superior,* 102 DPR 195, 199-200 (1974), citando a *Dávila v. Superintendente de Elecciones,* 82 DPR 264, (1960), pág. 283, lo siguiente:

> "Para que deba expedirse un auto de *mandamus,* sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto 'altamente privilegiado,' según expresa la ley de su creación, 32 L.P.R.A. sec. 3421 , y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial.
>
> En otras palabras, el remedio no se concede *ex debito justitiae* y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto."

Cabe destacar que, nuestro más Alto Foro ha expresado que, le "compete a los tribunales determinar si el deber ministerial surge o no de la ley aplicable", puesto que, "no depende de un juicio *a priori* fundado exclusivamente en la letra del estatuto". *Romero, Valentín v. Cruz, CEE et al.,* supra, pág. 986 citando a *Hernández Agosto v. Romero Barceló,* 112 DPR 407, 418 (1982). Tal determinación deberá "surgir del examen y análisis de todos los

elementos útiles a la función interpretativa". *Romero, Valentín v. Cruz, CEE et al.*, supra, pág. 986 citando a *AMPR v. Srio. Educación, ELA*, supra, pág. 264.

### D. Ley Núm. 47 de 21 de septiembre de 2021

Debido a la crisis económica a la que se enfrenta Puerto Rico, y con el propósito de asegurar el bienestar y calidad de vida de los trabajadores y de las trabajadoras de Puerto Rico, a través de una recompensa justa por su jornada laboral, la Asamblea Legislativa promulgó la Ley Núm. 47 de 21 de septiembre de 2021, conocida como *Ley de Salario Mínimo de Puerto Rico*.[2] La Asamblea Legislativa llevó a cabo un análisis donde razonó que, debido a que no había podido adoptar una legislación que estableciera un salario mínimo mayor al federal, era momento de establecer por medio de legislación una Comisión Evaluadora de Salario Mínimo, a la cual se le delegase la responsabilidad de establecer el salario mínimo para Puerto Rico, que contase con el peritaje necesario para poder establecer un salario mínimo idóneo en estudio y consulta con los sectores relacionados.[3]

Por otro lado, la Asamblea Legislativa entendió que se debía implementar un aumento del salario mínimo de forma escalonada para evitar impactos mayores en el sector comercial, pero que a la vez, se ajustara y fuera adecuado al costo de vida de la clase trabajadora puertorriqueña.[4] Lo anterior, basado en los principios fundamentales de que: 1) la decisión sobre cuál será el salario mínimo debería ser tomada basada en elementos medibles, con el consejo de profesionales del campo de la economía y con participación de los sectores involucrados, y 2) perseguir el objetivo consciente de la política pública, de tener un salario mínimo donde

---

[2] *Exposición de Motivos* de la Ley Núm. 47-2021, *supra.*
[3] *Exposición de Motivos* de la Ley Núm. 47-2021, *supra.*
[4] *Exposición de Motivos* de la Ley Núm. 47-2021, *supra.*

nadie que trabaje se encuentre bajo el nivel de pobreza y que los trabajadores tengan suficiente ingreso para cubrir sus necesidades básicas.[5] Con el propósito de implementar la política pública sobre el salario mínimo, la Asamblea Legislativa creó la Comisión Evaluadora, para que estudiara a cabalidad los costos de vida básicos de la clase trabajadora puertorriqueña y para que, basándose en esos estudios, dictara el salario mínimo adecuado para cubrirlos. De igual forma, delegó a la Comisión Evaluadora el llevar a cabo una revisión anual del salario mínimo, para así poder atemperarlo al cambio de las condiciones económicas de los puertorriqueños.[6]

No obstante a la delegación de facultades a la Comisión Evaluadora, la Asamblea Legislativa mediante la Ley de Salario Mínimo, *supra*, implementó un aumento escalonado del salario mínimo. A saber, la Sección 2.02 de la Ley Núm. 47-2021, *supra*, dispone lo siguiente:

> El 1 de enero de 2022, se aumentará el salario mínimo en Puerto Rico a ocho dólares con cincuenta centavos la hora ($8.50/hr). Para el 1 de julio de 2023 el aumento del Salario Mínimo en Puerto Rico, será de nueve dólares con cincuenta centavos la hora ($9.50/hr). Para el 1 de julio de 2024, **el aumento al salario mínimo de Puerto Rico será de diez dólares con cincuenta centavos la hora ($10.50/hr) a menos que la Comisión Evaluadora de Salario Mínimo emita un decreto mandatorio variando el mismo**. (Énfasis nuestro). 20 LPRA sec. 262a. (*Énfasis suplido*).[7]

El aumento escalonado responde a la intención de lograr un balance en la política pública de proveer un salario digno y a su vez, proteger a los negocios en Puerto Rico.[8]

En cuanto a la Comisión Evaluadora, la Ley Núm. 47-2021, establece:

---

[5] *Exposición de Motivos* de la Ley Núm. 47-2021, *supra*; Sec. 1.02 de la Ley Núm. 47-2021.
[6] *Exposición de Motivos* de la Ley Núm. 47-2021, *supra*; Sec. 1.02 de la Ley Núm. 47-2021.
[7] 29 LPRA sec. 262a.
[8] *Exposición de Motivos* de la Ley Núm. 47-2021, *supra*.

Se crea la Comisión Evaluadora del Salario Mínimo, adscrita al Departamento del Trabajo y Recursos Humanos. La Comisión estará integrada por siete (7) personas de reconocida simpatía con los propósitos de esta Ley: dos (2) serán representantes de los intereses de los(as) trabajadores(as), de estos al menos uno(a) será economista; dos (2) serán representantes de los intereses de los patronos, de estos al menos uno(a) será economista; uno(a) (1) será economista recomendado(a) por los Departamentos de Economía de la Universidad de Puerto Rico y la Asociación de Economistas de Puerto Rico; uno(a) (1) será economista experto(a) en asuntos laborales recomendado por el Instituto de Relaciones del Trabajo de la Universidad de Puerto Rico y de los Departamentos de Economía de la Universidad de Puerto Rico; uno(a) (1) será representante del interés público, manifestado en el cargo del Secretario(a) del Departamento del Trabajo y Recursos Humanos, quien presidirá la Comisión.

Los(as) dos representantes de los intereses de los(as) trabajadores(as), de los cuales al menos uno(a) será economista, serán nombrados(as) por el(la) Gobernador(a) de las distintas ternas que sometan las organizaciones obreras públicas o privadas debidamente autorizadas para representar a su matrícula en negociaciones colectivas de relaciones obrero-patronales. Una vez nombrados(as) por el Gobernador, estos(as) representantes deberán contar con el consejo y consentimiento del Senado de Puerto Rico.

Los(as) dos representantes de los intereses de los patronos, de los cuales al menos uno(a) será economista, serán nombrados(as) por el(la) Gobernador(a) de una terna recomendada por aquellas asociaciones y agrupaciones, debidamente organizadas, cuya membresía exceda los cien (100) socios, y que representen los intereses patronales de industrias y negocios que operen en Puerto Rico. Una vez nombrados(as) por el(la) Gobernador(a), estos(as) representantes deberán contar con el consejo y consentimiento del Senado de Puerto Rico.

El(La) economista, será nombrado por el(la) Gobernador(a) de las distintas ternas recomendadas por los Departamentos de Economía de la Universidad de Puerto Rico y la Asociación de Economistas de Puerto Rico. Una vez nombrado(a) por el(la) Gobernador(a), este(a) economista deberá contar con el consejo y consentimiento del Senado de Puerto Rico.

El(la) economista experto(a) en asuntos laborales serán nombrado(a) por el(la) Gobernador(a) de las distintas ternas recomendadas por los Departamentos de Economía de la Universidad de Puerto Rico, y el Instituto de Relaciones del Trabajo de la Universidad de Puerto Rico. Una vez nombrado(a) por el(la) Gobernador(a), este(a) economista deberán contar con el consejo y consentimiento del Senado de Puerto Rico.

[...][9]

Respecto al quorum, la Sección 2.05 de la Ley de Salario Mínimo, *supra*, dispone lo siguiente:

> Cinco (5) integrantes de la Comisión constituirán quorum, y únicamente con el voto afirmativo de estos(as) se entenderá aprobada cualquier acción de la Comisión. La vacante o ausencia de dos (2) de sus integrantes no menoscabará el derecho de los y las integrantes restantes a ejercer todos los poderes de la Comisión. El(La) Presidente(a) de la Comisión será el(la) jefe(a) ejecutivo(a) de la Comisión y los asuntos de naturaleza puramente administrativa de la Comisión serán ejercidos por él(ella).[10]

En lo pertinente, la Sección 2.09(c) de la Ley Núm. 47-2021, *supra*, establece que:

> (c) **Será deber de la Comisión, realizar o comisionar un Informe Anual respecto a los salarios, horario, beneficios, remuneraciones y las condiciones de trabajo que prevalecen en las distintas industrias en Puerto Rico. Este Informe deberá contener un análisis comprensivo del costo de vida y la inflación en Puerto Rico, así como recomendaciones puntuales sobre cuál debería ser el salario mínimo para ese año natural.** También, deberá tomar en consideración el valor monetario de los programas de beneficencia social en contraste con el salario mínimo vigente y propuesto, así como su interacción con programas de recompensa y crédito al trabajo, tales como, pero sin limitarse a, el Earned Income Tax Credit (EITC, por sus siglas en ingles) y el Child Tax Credit (CTC, por sus siglas en inglés) con su respectiva aplicación local. A su vez, debe tomar en consideración indicadores del mercado laboral en Puerto Rico tales como, pero sin limitarse, a empleo, desempleo, participación laboral y salarios. De igual forma, debe tomar en consideración los indicadores de desarrollo económico de Puerto Rico tales como, pero sin limitarse, al índice de actividad económica y productividad. Además, este informe deberá divulgar la metodología usada para llegar a su conclusión de manera detallada y revisable entre pares. El informe anual debe estar accesible a través de la página electrónica del Departamento del Trabajo y Recursos Humanos; este debe ser descargable electrónicamente en formato de documento entre otros formatos electrónicos de uso generalizado y estar en cumplimiento con los estándares de datos abiertos. (Énfasis suplido).

En cuanto al inciso (d) de la Sección 2.09 de la Ley Núm. 47-2021, *supra*, este dispone que, a raíz de la confección y publicación

---

[9] 29 LPRA sec. 262b.
[10] 29 LPRA sec. 262d.

del correspondiente *Informe sobre el Costo de Vida y la Inflación en Puerto Rico*, la Comisión Evaluadora tendrá la responsabilidad de aprobar decretos mandatorios que, conforme a la política pública de la Ley, dicte el salario mínimo adecuado para cubrir los costos de vida básicos de los trabajadores. Añade que, los decretos mandatorios deberán ser aprobados al menos una vez cada dos años, pero no podrá aprobarse más de dos decretos mandatorios para variar el salario mínimo vigente en un (1) mismo año[11].

Por otro lado, el inciso (e) de la Sección 2.09, que dispone que "con excepción del primer decreto mandatorio que establezca la Comisión por encima del salario mínimo base fijado en esta Ley, ningún otro cambio en el salario mínimo de determinado año podrá exceder más del 25% del salario mínimo anteriormente fijado por la propia Comisión o por el Gobierno Federal".[12]

En fin, la Asamblea Legislativa, mediante la Ley Núm. 47-2021, *supra*, busca adecuar el salario mínimo al costo de vida de la clase trabajadora puertorriqueña, resguardándose en el principio de que ningún trabajador esté bajo el nivel de pobreza, que cuenten con suficiente ingreso para cubrir sus necesidades básicas, y asegurar el progreso y mejoramiento de los niveles de vida.[13]

### E. Reglas Generales de Interpretación de las Leyes

Por último, al ejercer funciones exegéticas de una legislación, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y su determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener. *Chase Manhattan Bank v. Mun. de San Juan*, 126 DPR 759, 766 (1990). Los principios de hermenéutica sirven de base cuando los tribunales están

---

[11] 29 LPRA sec. 262d.
[12] 29 LPRA sec. 262e.
[13] Sec. 1.02 de la Ley Núm. 47-2021, 29 LPRA sec. 261a.

llamados a interpretar las leyes. En ese ejercicio, de primera intención se debe determinar si el lenguaje de la ley es simple y preciso en relación a la controversia. *SLG Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 691 (2011). El Art. 19 del Código Civil de Puerto Rico, dispone que "cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[14] Conforme a lo anterior, nuestra más Alta Curia en *Rivera Fernández v. Mun. Carolina,* 190 DPR 196 (2014), estableció lo siguiente:

> [...] la letra de la ley no debe seguirse ciegamente cuando ello iría en detrimento de su espíritu y su fin. (Citas internas omitidas.) En ese sentido, aplica el principio rector que hemos enunciado en ocasiones anteriores que dispone que "[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente quiso obtenerse. (Citas internas omitidas.)

Por tanto, los tribunales estamos compelidos a interpretar las leyes, teniendo presente el propósito social que las inspiró, dándoles un sentido lógico a sus diversas disposiciones y supliendo las deficiencias cuando ello sea inevitable. Cualquier interpretación que resulte absurda al propósito por el cual fue creado el estatuto debe ser rechazada. *Sucn. Álvarez v. Srio. de Justicia,* 150 DPR 252, 274-275 (2000); *Santini Gaudier v. CEE,* 185 DPR 522 (2012). Una vez se descubre el deseo y la voluntad del legislador el fin de la interpretación ha sido logrado. *Yiyi Motors, Inc. v. ELA,* 177 DPR 230, 249 (2009); *Dorante v. Wrangler of PR,* 145 DPR 408, 417 (1998). Véase, además, R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico,* San Juan, Publicaciones JTS, 1987, págs. 241-242. Así pues, en el descargo de nuestro deber ministerial de impartir justicia, los jueces debemos

---

[14] 31 LPRA sec. 5341.

tener presente la siguiente máxima: "*[e]l Derecho no puede llevar a un resultado absurdo ni a un resultado injusto y debemos convencernos de que cuando nos lleva a este resultado es porque hemos seguido un camino equivocado, porque hemos errado en nuestros razonamientos*". *Jiménez v. Reyes*, 146 DPR 657, 664-665 (1998), citando a J. Vallet de Goytisolo, *Panorama del Derecho Civil*, Barcelona, Ed. Bosch, 1963, pág. 86.

### F. Justiciabilidad

Como es sabido, los tribunales revisores solo podremos resolver los casos que sean justiciables. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727 (2022); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011). La doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de estos. Dicha doctrina nace del principio elemental de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas, que tienen un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, para el ejercicio válido del poder judicial se requiere la existencia de un caso o controversia real. *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007); *Hernández, Santa v. Srio. de Hacienda*, supra; *Bhatia Gautier v. Gobernador*, supra, pág. 68. Según lo dispuesto por nuestro Máximo Foro, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otros*, 206 DPR 803 (2021); *Bhatia Gautier v. Gobernador*, supra, págs. 68-69.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

La parte apelante acudió ante este foro revisor mediante *Apelación*, donde le imputó al foro *a quo* los siguientes tres señalamientos de errores, que serán discutidos de forma conjunta por encontrarse intrínsecamente relacionados.

En su primer señalamiento de error, la parte apelante sostiene que, el foro de primera instancia incidió en su interpretación de la Secc. 2.02 de la Ley de Salario Mínimo, *supra*, al decidir que, tal disposición opera *ex proprio vigore* y que, por tanto, la Comisión Evaluadora no debía tener mayoría de cinco (5) votos para aprobar el aumento de $10.50/hr, efectivo al 1 de julio de 2024, pues "solo tenía capacidad de hacer una variación al aumento mediante decreto". Sostiene que, tal interpretación es contraria a la letra del estatuto visto en forma integral, según las reglas de hermenéutica.

Como segundo señalamiento de error, la parte apelante arguye que, el foro primario incurrió en error al determinar que la Comisión Evaluadora no tiene el deber ministerial de aprobar el aumento de $10.50/hr, efectivo al 1 de julio de 2024 o variarlo mediante voto afirmativo de cinco (5) de sus miembros, razón por la cual denegó la solicitud de *mandamus*, a pesar de que el alegado deber ministerial emana de la interpretación integral de la Sec. 2.02 de la Ley de Salario Mínimo, *supra*, vista en conjunto con su *Exposición de Motivos* y las secs. 2.03, 2.05, 2.09d y 2.11.

Como último señalamiento de error, la parte apelante sugiere que el Tribunal de Primera Instancia se equivocó al determinar que la solicitud de sentencia declaratoria no procedía por falta de justiciabilidad en cuanto a la cantidad de votos de los miembros de la Comisión Evaluadora necesarios para aprobar el aumento de $10.50 la hora efectivo al 1ro de julio de 2024 o variarlo, toda. Lo

anterior, ya que, a juicio de la parte apelante, tal asunto se encuentra en controversia y pronunciarse sobre ello es un asunto justiciable maduro que debe atenderse en sus méritos según los hechos del caso.

Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, el 12 de junio de 2024, la Comisión Evaluadora emitió un comunicado de prensa mediante el cual anunció que, a partir del 1ro de junio de 2024, entraría en vigor el aumento del salario mínimo de $10.50 la hora, conforme a la Ley Núm. 47-2021, *supra.* Consecuentemente, la parte apelante presentó una *Petición de Mandamus y/o Solicitud de Sentencia Declaratoria.* Luego de varios trámites procesales ya discutidos, el 8 de julio de 2024, el Tribunal de Primera Instancia emitió la *Sentencia* cuya revisión nos atiene, donde desestimó las peticiones de *mandamus* y sentencia declaratoria. Primeramente, el foro de primera instancia expresó que, era necesario analizar el texto de la sección 2.02 de la Ley Núm. 47-2021, *supra,* para determinar si existía un deber ministerial incumplido. Luego de analizar el texto de la aludida sección, determinó que, la Asamblea Legislativa estableció un aumento obligatorio y sin condición de $8.50/hr del 1 de enero de 2022 al 1 de julio de 2023, al igual que un aumento de $9.50/hr del 1 de julio de 2023 al 1 de julio de 2024. Indicó que, del texto de la propia ley surge meridianamente claro que la Asamblea Legislativa estableció un aumento del salario mínimo de $10.50/hr, que podría ser variado mediante un decreto mandatorio emitido por la Comisión Evaluadora. En cuanto a la imposición del salario mínimo de $10.50/hr en la Sección 2.02 de la Ley de Salario Mínimo, *supra,* el foro primario explicó que constaba de dos partes, a saber, "1) la norma general en la cual se estableció, mediante acto legislativo (de igual forma que los aumentos anteriores del 2022 y 2023) un aumento de salario mínimo comenzando el 1 de julio de

2024; y 2) el establecimiento de una excepción o condición a que se estableciera el aumento a $10.5/hr si la Comisión determina, luego de haber llevado a cabo los estudios necesarios, que se debe emitir un decreto mandatorio variando este". En esa línea, concluyó que el texto de la ley no contenía ambigüedades y está claro que la Asamblea Legislativa había determinado establecer un aumento de salario mínimo a $10.50/hr, y que esta, le había delegado a la Comisión Evaluadora la tarea de determinar si, conforme al análisis requerido por la ley, procedía que se realizara una variación del salario mínimo establecido. A base de lo anterior, razonó que, la Comisión Evaluadora había determinado no variar de ninguna forma el salario mínimo de $10.50/hr y que esta acción no requería el voto de cinco (5) miembros según argumentaba la parte apelante. Ello, dado a que, la Comisión Evaluadora únicamente tenía la capacidad de hacer una variación al aumento mediante decreto mandatorio. Por lo que, concluyó que no existía un deber ministerial incumplido.

En primer lugar, respecto al aumento del salario mínimo estatal, la Sección 2.02 de la Ley Núm. 47-2021, *supra*, dispone lo siguiente:

> El 1 de enero de 2022, se aumentará el salario mínimo en Puerto Rico a ocho dólares con cincuenta centavos la hora ($8.50/hr). Para el 1 de julio de 2023 el aumento del Salario Mínimo en Puerto Rico, será de nueve dólares con cincuenta centavos la hora ($9.50/hr). Para el 1 de julio de 2024, el aumento al salario mínimo de Puerto Rico será de diez dólares con cincuenta centavos la hora ($10.50/hr) **a menos que la Comisión Evaluadora de Salario Mínimo emita un decreto mandatorio variando el mismo**. (Énfasis nuestro). 20 LPRA sec. 262a. (*Énfasis suplido*).

De acuerdo al derecho expuesto, los principios de hermenéutica sirven de base cuando los tribunales estamos llamados a interpretar las leyes. Dentro de ese ejercicio, de primera intención se deberá determinar si el lenguaje de la ley es simple y

preciso en relación a la controversia.[15] Nuestro ordenamiento jurídico ha dispuesto que "cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[16]

De la precitada sección de la ley surge claramente, sin espacio a ambigüedad ni dudas, que, la Asamblea Legislativa impuso un aumento salarial automático de $10.50/hr, y que la *excepción* a ello era que la Comisión Evaluadora emitiera un decreto mandatorio variando el mismo si así lo decidía luego de realizar el análisis correspondiente. En el caso de marras, la Comisión Evaluadora determinó *no variar* el aumento de forma alguna, por ende, como bien resolvió el foro apelado, no era necesario que emitiera un decreto mandatorio, puesto que no se dieron las condiciones para así hacerlo.

Inclusive, de la *Minuta* de la *Reunión Ordinaria* se desprende que, en la discusión del informe final del salario mínimo general, el Presidente, Gabriel Maldonado-González, "[r]ecordó que la Ley Núm. 47-2021 dispone que el aumento a $10.50 comenzará a partir del 1 de julio de 2024, **a menos que la Comisión disponga otra cosa**. Por lo cual, **la Comisión deberá emitir un decreto si quiere variar lo establecido en ley**". (*Énfasis Suplido*). De igual forma, indicó que, la decisión a tomarse debía ser por mayoría conforme al *Reglamento Interno* de la Comisión Evaluadora. Asimismo, surge de la *Minuta*, que, luego de discutir el informe y llevar a cabo la votación, el Presidente, Gabriel Maldonado-González "[i]ndicó que restaría comunicar la decisión, ya que **no sería necesario un decreto pues prevaleció lo dispuesto en la Ley Núm. 47-2021**". (*Énfasis Suplido*).

---

[15] *SLG Solá-Moreno v. Bengoa Becerra*, supra, pág. 691.
[16] Art. 19 del Código Civil de Puerto Rico, 31 LPRA sec. 5341.

La Ley de Salario Mínimo, *supra,* no dispone el deber de la Comisión Evaluadora de emitir un decreto mandatorio para que entrara en vigor el aumento de $10.50/hr, esa obligación surgiría *únicamente* si la Comisión Evaluadora decidía variarlo según ya explicáramos. Es decir, el aumento no estaba sujeto a la aprobación de la Comisión Evaluadora, pues fue estatuido afirmativamente por la Asamblea Legislativa. Por lo tanto, ante el rechazo mayoritario de variar el aumento salarial, procedía su implementación de forma automática sin intervención de la Comisión Evaluadora.

Por otro lado, tal como bien aduce la parte apelada, respecto a las facultades y deberes de la Comisión Evaluadora, los incisos (c) y (d) de la Sección 2.09 de la Ley de Salario Mínimo, *supra*, nada disponen sobre un deber ministerial de la Comisión Evaluadora de *aprobar* un Informe sobre el Costo de Vida y la Inflación en Puerto Rico, y de *aprobar*, de así decidirlo, el aumento al salario mínimo de $10.50/hr a partir del 1 de julio de 2024. De entrada, la Sección 2.09(c) de la Ley Núm. 47-2021, *supra*, dispone lo siguiente:

(c) **Será deber de la Comisión, realizar o comisionar un Informe Anual respecto a los salarios, horario, beneficios, remuneraciones y las condiciones de trabajo que prevalecen en las distintas industrias en Puerto Rico. Este Informe deberá contener un análisis comprensivo del costo de vida y la inflación en Puerto Rico, así como recomendaciones puntuales sobre cuál debería ser el salario mínimo para ese año natural.** También, deberá tomar en consideración el valor monetario de los programas de beneficencia social en contraste con el salario mínimo vigente y propuesto, así como su interacción con programas de recompensa y crédito al trabajo, tales como, pero sin limitarse a, el Earned Income Tax Credit (EITC, por sus siglas en ingles) y el Child Tax Credit (CTC, por sus siglas en inglés) con su respectiva aplicación local. A su vez, debe tomar en consideración indicadores del mercado laboral en Puerto Rico tales como, pero sin limitarse, a empleo, desempleo, participación laboral y salarios. De igual forma, debe tomar en consideración los indicadores de desarrollo económico de Puerto Rico tales como, pero sin limitarse, al índice de actividad económica y productividad. Además, este informe deberá divulgar la metodología usada para llegar a su conclusión de manera detallada y revisable entre pares. El informe anual debe estar accesible a través de la página electrónica del

Departamento del Trabajo y Recursos Humanos; este debe ser descargable electrónicamente en formato de documento entre otros formatos electrónicos de uso generalizado y estar en cumplimiento con los estándares de datos abiertos. (*Énfasis suplido*).

Queda categóricamente establecido que, la Comisión Evaluadora deberá realizar o comisionar un Informe Anual que abarque un análisis sobre el costo de vida, condiciones de trabajo, así como de la inflación en Puerto Rico. Del *Comunicado* de prensa emitido por la Comisión Evaluadora el 12 de junio de 2024, de la *Sentencia* y de la *Minuta* de la *Reunión Ordinaria* celebrada el 12 de junio de 2024, surge que, la Comisión Evaluadora cumplió con lo estatuido en el inciso (c) de la Sección 2.09 de la Ley Núm. 47-2021, *supra,* en la medida en que comisionó a la firma Abexus Analytics un informe intitulado *Minimum Wages Analysis Puerto Rico General Minimum Wage.* Respecto al referido informe con fecha de 7 de junio de 2024, la Comisión Evaluadora en el comunicado de prensa expresó lo siguiente:

> El pasado 7 de junio Abexus Analytics culminó su informe económico respecto al impacto del aumento salarial a $10.50, según lo previsto por ley. Dicho análisis tomó como base los datos recopilados en las planillas trimestrales del DTRH, el Censo Trimestral de Empleo y Salarios (ES-202), los datos agregados de las planillas sobre ingresos de corporaciones del Departamento de Hacienda, la tasa de inflación y otros factores establecidos en la Ley Núm. 47-2021, mejor conocida como la Ley de Salario Mínimo de Puerto Rico. La recopilación de estos datos permitió crear múltiples simulaciones que miden el aumento en la fuerza laboral, el cierre de negocios y efecto inflacionario utilizando distintos aumentos hipotéticos.[17]

Este informe fue evaluado por la Comisión Evaluadora en la reunión del 12 de junio de 2024, y a base de ello, tomó la decisión de no variar el aumento de salario de $10.50/hr, ni su fecha de implementación, cumpliendo así, lo estatuido por la ley[18]. Como podemos notar, no se encontraba bajo las obligaciones de la

---

[17] *Comunicado Departamento del Trabajo y Recursos Humanos.*
[18] Véase *Minuta* de *Reunión Ordinaria* de 12 de junio de 2024.

Comisión Evaluadora el *aprobar* el informe, sino, realizarlo o comisionarlo, según hizo.

En cuanto al inciso (d) de la Sección 2.09 de la Ley Núm. 47-2021, *supra*, este dispone que, a raíz de la confección y publicación del correspondiente Informe sobre el costo de vida y la inflación en Puerto Rico, la Comisión Evaluadora tendrá la responsabilidad de aprobar decretos mandatorios que, conforme a la política pública de la Ley, dicte el salario mínimo adecuado para cubrir los costos de vida básicos de los trabajadores. Añade que, los decretos mandatorios deberán ser aprobados al menos una vez cada dos años, pero no podrá aprobarse más de dos decretos mandatorios *para variar el salario mínimo vigente* en un (1) mismo año. De acuerdo a lo anteriormente aludido, no se desprende una obligación de emitir un decreto mandatorio para específicamente hacer efectiva la imposición del aumento del salario mínimo de $10.50/hr al 1ro de julio de 2024. Al analizar lo anterior en conjunto al inciso (e) de la Sección 2.09, que dispone que "con excepción del primer decreto mandatorio que establezca la Comisión por encima del salario mínimo base fijado en esta Ley, ningún otro cambio en el salario mínimo de determinado año podrá exceder más del 25% del salario mínimo anteriormente fijado por la propia Comisión o por el Gobierno Federal", se desprende que, según como explica la parte apelada, tal inciso no es de aplicación al caso de autos. Lo anterior, debido a que la cantidad de $10.50/hr fue dispuesta por la propia Ley, no por la Comisión Evaluadora, en adición a que, esta última decidió *no variarlo*.

Respecto al argumento de la parte apelante sobre el *quorum* necesario para que la Comisión Evaluadora aprobara la imposición del aumento de salario de $10.50/hr, esta sostiene que es necesario el voto afirmativo de cinco (5) de sus miembros. En lo pertinente, la

Sección 2.05 de la Ley de Salario Mínimo, *supra,* dispone lo siguiente:

> Cinco (5) integrantes de la Comisión constituirán quorum, y únicamente con el voto afirmativo de estos(as) se entenderá aprobada cualquier acción de la Comisión. La vacante o ausencia de dos (2) de sus integrantes no menoscabará el derecho de los y las integrantes restantes a ejercer todos los poderes de la Comisión. El(La) Presidente(a) de la Comisión será el(la) jefe(a) ejecutivo(a) de la Comisión y los asuntos de naturaleza puramente administrativa de la Comisión serán ejercidos por él(ella).[19]

De acuerdo a lo ya discutido, no es necesario que la Comisión Evaluadora apruebe el aumento de salario de $10.50/hr, al este haber sido dispuesto por mandato legislativo en la Sección 2.02 de la Ley Núm. 47-2021, *supra.* A la Comisión Evaluadora, únicamente le fue delegada la discreción de, si luego de realizar los análisis y evaluaciones correspondientes, variar dicho aumento. Posterior a llevar a cabo dicho análisis, una mayoría de tres (3) a dos (2) de los miembros que formaron el quorum, votó a favor de mantener el aumento, y por ello, no se realizó una variación. Sobre esto no hay controversia alguna, pues queda claramente establecido. Es por lo que, es inmeritorio el argumento de la parte apelante respecto a la mayoría necesaria para que este entrara en vigor y fuese aprobado. Al no haber necesidad de que se apruebe el referido aumento por la Comisión Evaluadora, no es de aplicación la Sección 2.05 de la Ley de Salario Mínimo, *supra.* Ante la ausencia de una controversia real y justiciable, no procedía que el Tribunal de Primera Instancia emitiera una sentencia declaratoria, como bien resolvió.

**IV**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

---

[19] 29 LPRA sec. 262d.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones